Filed 3/9/22  P. v. Drummer CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARCELLOUS BERNARD DRUMMER,<br><br>    Defendant and Appellant. | H048576<br>(Santa Clara County<br>Super. Ct. No. C1477595) |

In November 2014, a Santa Clara County jury found defendant Marcellous Bernard Drummer guilty of six crimes related to a home invasion robbery, including murder (Pen. Code, § 187[1]), robbery of an inhabited place while acting in concert (§§ 211, 213, subd. (a)(1)(A)), battery (§ 242), criminal threats (§ 422), and two counts of false imprisonment (§§ 236, 237).  The jury also found true a robbery-murder special circumstance allegation (§ 190.2, subd. (a)(17)) and gang sentence enhancement allegations (§ 186.22, subd. (b)(1)).  Additionally, the trial court found true a prior prison term allegation (former § 667.5, subd. (b)).  At sentencing, the trial court imposed a determinate term of 11 years and consecutive indeterminate terms of life imprisonment

---

[1] Unspecified statutory references are to the Penal Code.

without the possibility of parole and 15 years to life. Drummer appealed the judgment of conviction.

During the pendency of Drummer's direct appeal, our Supreme Court clarified the meaning of the felony-murder special circumstance statute in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

In June 2017, this court reversed the judgment and directed the trial court to strike a 10-year gang sentence enhancement imposed on the murder count, strike the battery conviction, and correct certain errors in the abstract of judgment. (See *People v. Drummer* (June 15, 2017, H041826) [nonpub. opn.] (*Drummer I*).[2]) In his appeal, Drummer did not raise any claim of error based on *Banks* or *Clark*. (See *Drummer I*, *supra*, H041826.)

In September 2019, Drummer filed a petition in the trial court to vacate his murder conviction and be resentenced under section 1170.95 (hereafter petition). In October 2020, the trial court denied Drummer's petition without issuing an order to show cause. In this appeal Drummer contends the trial court erred in denying his petition when it concluded that the jury's special circumstance finding was "binding" on the petition and by improperly relying on its memory of facts presented at a separate trial of Drummer's coperpetrators.

For the reasons explained below, we reverse the trial court's order denying Drummer's petition because no court has determined whether the evidence was sufficient to support the jury's felony-murder special circumstance finding. We remand the matter for that determination under section 1170.95, subdivision (c).

---

[2] By separate order in this case, we granted Drummer's request that we take judicial notice of our records in his direct appeal (case No. H041826).

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Facts of the Crime as Presented at Drummer's 2014 Trial*[3]

Katrina Fritz worked as a prostitute and had a multi-year relationship with Raveesh Kumra. Raveesh shared a home with his ex-wife, Harinder Kumra. Shortly after Thanksgiving in 2012, Fritz's younger brother, DeAngelo Austin, told Fritz that he was going to go to the Kumras' house, which Fritz understood to mean that Austin was going to rob the Kumras. Later, Austin and Drummer met with Fritz. Drummer had known Austin since childhood, and they were members of the same criminal street gang. Drummer also had known Fritz for about 10 years. During their meeting, Fritz gave Austin a sketch of the Kumras' house and pointed out Raveesh's and Harinder's bedrooms. Drummer "said something like, 'I bet you they have a lot of gold.' " A third man sat inside Austin's car during the meeting.

On the night of November 29, 2012, Harinder awoke when Austin entered her bedroom. Austin hit, threatened, and walked Harinder downstairs to the kitchen. When Harinder got to the kitchen, "she saw Raveesh standing up with his hands tied behind his back. Raveesh was struggling and asking for help. The men pushed Raveesh to the floor. [¶] Harinder twice said, 'Don't push him. He's a heart patient. He'll die. And he has a breathing problem.' " The men blindfolded and bound Harinder and told her to lie down on the floor. "Someone yelled at her, 'Don't move. You're moving,' and then hit her on the legs." The men took the jewelry Harinder was wearing, and one of the robbers asked her the location of the money and safe. "Harinder said to [the men] many times, 'He has not moved. Please check him out. Please check him.' There was a person sitting near her, who told her that Raveesh was okay. He said, 'Don't worry. We'll call 911 if anything goes wrong. Okay?' He later said, 'I'm going to gather the other people now. We will be going very soon, but don't you get up. If you do, it won't be good.'

---

[3] We take these facts from this court's opinion in *Drummer I*, *supra*, H041826 and the trial record.

The man also told her, 'Okay. I'm going to gather people. Don't get up until we come back and tell you when to get up.' He left and she waited." Eventually, Harinder freed herself, retrieved a cell phone, and called 911.

Police and paramedics arrived and found Raveesh unresponsive. "The cause of death was probable asphyxia due to suffocation resulting from the duct tape over his mouth." The robbers had ransacked the house and taken several items, including cash, coins, jewelry, and gifts.

Later, Fritz met Drummer and Austin at a restaurant. "[Drummer] told her, 'Shit. It went bad. . . . It went bad, like, he's dead.' . . . As Austin later told [Fritz] what had happened, [Drummer] was agreeing with him. Fritz responded, '[T]his is going to be bad.' Both [Drummer] and Austin told her not to worry and that they would confess to the crimes." In addition, when asked by Fritz about his actions during the crime, Drummer said that he "just sat there and, like, watched [Raveesh]."[4] Austin gave Fritz $2,000 in cash at the restaurant and another $40,000 the following week.

"A prosecution expert testified that [Drummer] was a possible contributor to the DNA collected from a swab of Raveesh's right hand. In her opinion, it was 5,000 times more likely that [Drummer] contributed to the DNA on the swab than an unknown individual in the African-American population. Austin and Javier Garcia were contributors to DNA found on other items in the Kumras' residence."[5]

Cell phone records showed that phones associated with Drummer, Austin, and Garcia were in the area around the Kumras' residence on the night of the crime. Additionally, during a jail phone call, Drummer referenced a purse that police had seized

---

[4] In contrast to Fritz's testimony about what Drummer had said to her about sitting and watching Raveesh, Harinder testified that she thought it was Austin who had sat near her during the attack, checked on Raveesh at her request, and ordered the other men around.

[5] Austin and Garcia were tried together for this incident in April 2016. (See *People v. Garcia* (2020) 46 Cal.App.5th 123, 130.)

4

from his acquaintance, saying, " 'That ain't the purse [stolen from Harinder] so they gon' be up and give [the acquaintance] that back.' "

B. *Instructions, Arguments, and Verdicts at Trial*

At Drummer's 2014 trial, the trial court instructed (and the prosecution argued) that the jurors could find Drummer guilty of robbery (personally or as an aider and abettor) and murder based on the natural and probable consequences of committing a robbery, the natural and probable consequence of an uncharged conspiracy to commit robbery, and/or felony murder. However, the instructions that specifically addressed the elements of murder only instructed the jury as to first-degree felony murder and told the jury that murder was charged in this case "under a theory of felony murder."

Regarding the felony-murder special circumstance allegation, the trial court instructed the jury with CALCRIM Nos. 700 and 730 and a then-current version of CALCRIM No. 703. Under CALCRIM No. 700, the jury was instructed that if it found Drummer guilty of first degree murder, it also had to decide whether the People have proved that the special circumstance is true. Under CALCRIM No. 730, the jury was told that the People had to prove: (1) the defendant aided and abetted or was a member of a conspiracy to commit robbery; (2) the defendant intended to commit, or intended to aid and abet the perpetrator in committing or intended that a member of the conspiracy commit robbery; (3) if the defendant did not personally commit robbery, then a perpetrator whom the defendant was aiding and abetting before or during the killing or with whom the defendant conspired personally committed robbery; and (4) the defendant or a perpetrator did an act that caused the death of another person. The instruction further required: "The defendant must have intended to commit, or aided and abetted or been a member of a conspiracy to commit the felony of robbery before or at the time of the act causing the death. [¶] In addition, in order for this special circumstance to be true, the People must prove that the defendant intended to commit robbery independent of the killing."

5

The instruction under CALCRIM No. 703 stated in part: "In order to prove this special circumstance for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor or a member of a conspiracy, the People must prove either that the defendant intended to kill, or the People must prove all of the following: [¶] 1. The defendant's participation in the crime began before or during the killing; [¶] 2. The defendant was a major participant in the crime; [¶] AND [¶] 3. When the defendant participated in the crime, he acted with reckless indifference to human life. [¶] A person acts with reckless indifference to human life when he or she knowingly engages in criminal activity that he or she knows involves a grave risk of death."

In his closing argument to the jury, the prosecutor stated that the People "have no evidence [Drummer] was the actual killer" and "[w]e don't know where Mr. Drummer was when Mr. Kumra was taped." The prosecutor also acknowledged that it was Fritz's opinion that "neither her brother nor Mr. Drummer had any intent to kill Mr. Kumra." Nevertheless, the prosecutor urged the jury to find the felony-murder special circumstance true because Drummer was a major participant in the crime and acted with reckless indifference to human life.

On November 4, 2014, the jury returned a general verdict on the murder charge, finding Drummer guilty "in violation of Penal Code [section] 187, a Felony, as charged in the Information." Similarly, for the special circumstance, the jury returned a general verdict, finding the "[a]llegation that Defendant was engaged in or was an accomplice in the commission, the attempted commission, or the immediate flight after the commission or attempted commission of a felony, Robbery, in violation of Penal Code [section] 211 or [section] 212.5, within the meaning of Penal Code [section] 190.2[, subdivision] (a)(17) to be [t]rue."

In a motion for a new trial, Drummer broadly contended that there was insufficient evidence for "the required intent or mental state as harbored by [him] in order to establish

6

his guilt."  Drummer "further submitted that the evidence is insufficient as to the special circumstance as set forth in [CALCRIM No.] 703.  The evidence establishes that he was not the actual killer.  The evidence does not satisfactorily establish that he was a major participant in the offense and it was not proved that he acted with the intent to kill or with the reckless indifference to [human] life."

The prosecutor opposed Drummer's motion, asserting there was sufficient evidence to sustain the jury's verdicts.  The prosecutor again conceded Drummer was not the actual killer and argued:  "In order to find the special circumstance true, because the Defendant was not the actual killer, the Jury had to have found that the Defendant joined the robbery during or before the killing, he was a major participant and he acted with reckless indifference to human life."

In December 2014, the trial court denied Drummer's motion for a new trial.  The court noted the DNA evidence, cell phone evidence, and testimony of Fritz and Harinder, and stated that "a reasonable jury could easily come to the conclusion that this jury did."

C.  *Direct Appeal*

In his appeal from the judgment of conviction, Drummer filed his opening brief on September 28, 2016.  The Attorney General filed her brief on November 21, 2016. Drummer filed his reply brief on November 29, 2016.

Drummer did not raise any claim challenging the sufficiency of the evidence for the jury's special circumstance finding or otherwise mention *Banks* or *Clark*—both of which had been issued by our Supreme Court after Drummer's trial but before he filed his opening brief.[6]

---

[6] We note that Drummer's appellate counsel wrote the following when claiming that section 190.2, subdivision (a)(17)(A) failed to meaningfully narrow the class of defendants subject to it:  "Although there was no definitive evidence that Drummer was one of the actual killers, and the jury did not make an express finding, there was evidence to support such a finding.  . . .  Thus, the jury may have concluded that Drummer was the actual killer, and found the special circumstance allegation true on that basis."

7

As mentioned *ante*, on June 15, 2017, this court reversed the judgment with directions to strike a gang sentence enhancement and the battery conviction and to correct the abstract of judgment.  (*Drummer I*, *supra*, H041826.)

D.  *Proceedings on the Section 1170.95 Petition*

On September 9, 2019, Drummer filed on his own behalf a petition for resentencing pursuant to section 1170.95.  He alleged that he was convicted of first-degree felony murder and could not be convicted under current murder law because he was not the actual killer, he did not aid or abet the actual killer with an intent to kill, he either was not a major participant in the felony or did not act with reckless indifference to human life during the course of the felony, and the victim was not a peace officer performing his or her duties.

The trial court appointed counsel for Drummer and obtained briefing on the petition from the Santa Clara County District Attorney and Drummer's counsel.  The district attorney opposed Drummer's petition arguing, inter alia, that the jury's finding on the felony-murder special circumstance allegation rendered section 1170.95 inapplicable and Drummer had not made the requisite prima facie showing that he could not be convicted of murder under current law.  The district attorney asserted that "[t]he jury found that [Drummer], based on the facts adduced at the jury trial, was a major participant in the robbery who acted with reckless indifference to human life."  The district attorney also maintained that, regardless of the jury's special circumstance finding, "the facts adduced at the jury trial provide uncontradicted evidence that [Drummer] was a major participant in the robbery who acted with reckless indifference to human life."

In his reply to the district attorney's opposition, Drummer argued that an order to show cause should issue because, "[i]n light of the changes brought about by *Banks* and *Clark*," he "could not now be convicted of murder.  That is, under the law as it stands today, he was not a major participant in the robbery and he did not act with a reckless

8

indifference to human life." Drummer also asserted that the jury's special circumstance finding "does not negate the prima facie case."

On October 20, 2020, the trial court denied Drummer's petition without issuing an order to show cause. The court explained: "[I]n this case, the jury finding of special circumstance is part of the court record of conviction. [¶] I should also point [out] I'm uniquely familiar with the facts in this case because I tried the co-defendant, DeAngelo Austin, who, along with Mr. Drummer, were kind of the organizers of this home invasion that took place. [¶] But I am familiar with the facts, which is of no consequence, really, other than the fact that I am aware of testimony that came out during my trial with regard to the actions of Mr. Drummer during the home invasion, as well as actions of other people who were involved in this. [¶] So I think that testimony is also part of the court record of conviction, to an extent. But specifically, the jury finding of special circumstance is part of the court record of conviction, and I think in this case -- I think since the jury found the special circumstance to be true, at least upon the instructions that were given to them, I think that that's binding on this court. [¶] So I think that, given that the jury found the special circumstance to be true, I think that not only could Mr. Drummer be convicted under the new law. I think, in a sense, he was convicted under the new law because the jury did find that he was a major participant and exhibited reckless disregard for human life. [¶] So I think based upon that, I'm going to deny the petition."

Seeking clarification of the trial court's ruling, Drummer's counsel asked the court if its ruling was based on the jury's special circumstance finding alone or if it was also relying on the facts "as the court knows them" from Austin's trial. The trial court responded that it "can't wipe those [facts] out of [its] mind" and said that the facts about Drummer "sitting watch over these two people, and, basically assaulting [Harinder] when she was trying to plead for someone to call medical assistance for her husband" were "the facts" in the Austin case and "also the facts alleged in [this] case -- in [counsel's] brief as to what happened at the time" of the crime. Counsel then asked a follow-up question

9

about whether "it's both the jury's finding, as well as the facts [as] alleged in the brief?" The court responded, "Yes. But, primarily, the jury's finding, because that is part of the . . . court record of conviction."

Drummer timely appealed the trial court's order denying his petition.

## II. DISCUSSION

Drummer contends the trial court erred by denying his petition based on improper facts such as the jury's " 'binding' " special circumstance finding and the court's memory of facts from Austin's separate trial. Drummer further asserts that this court must remand with directions to issue an order to show cause because the record of conviction does not establish his lack of entitlement to relief as a matter of law.

The Attorney General counters that, because Drummer's conviction became final after *Banks* and *Clark* were decided, relief is barred by the jury's special circumstance finding. Alternatively, the Attorney General asserts that we should affirm the trial court's order because the record shows Drummer "could be viewed as the actual killer either on the basis of concurrent causation, or on the basis that he failed to take appropriate action when a person unable to care for himself was left in his charge." The Attorney General also maintains there is sufficient evidence in the record of Drummer's major participation and reckless indifference to human life.

A. *Applicable Statutes and Legal Principles*

1. Senate Bill Nos. 1437 and 775

Senate Bill No. 1437 took effect on January 1, 2019, and "addresse[d] certain aspects of California law regarding felony murder and the natural and probable consequences doctrine." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722; Stats. 2018, ch. 1015 [Sen. Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437)].) "Senate Bill 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major

10

participant in the underlying felony who acted with reckless indifference to human life.' "
(*People v. Gentile* (2020) 10 Cal.5th 830, 842.) "To further that purpose, Senate Bill 1437 added three separate provisions to the Penal Code." (*Ibid*.) Namely, section 189, subdivision (e), which amended the felony murder rule; section 188, subdivision (a)(3), which amended the natural and probable consequences doctrine; and section 1170.95, which created "a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Gentile*, at p. 843.)

The Legislature amended section 188 by adding subdivision (a)(3), which provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2; § 188, subd. (a)(3).) Further, section 189, subdivision (e), now limits liability for felony murder by providing: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[7] (See Stats. 2018, ch. 1015, § 3.)

---

[7] Section 190.2, subdivision (d) provides: "Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4." (§ 190.2, subd. (d).)

11

"[S]ection 189, subdivision (e)(3), as amended by Senate Bill 1437, is now 'the same as the standard for finding a special circumstance under section 190.2[, subdivision] (d) as the former provision expressly incorporates the latter.' " (*People v. Harris* (2021) 60 Cal.App.5th 939, 957, review granted Apr. 28, 2021, S267802.)  Regarding this overlap, one court has observed:  "Because we must presume the Legislature knows and acts against the backdrop of existing case law [citations], the language of section 189, subdivision (e)(3) as enacted by the Legislature in 2018 necessarily carries the meaning announced in *Banks* and *Clark*, since both cases were on the books when Senate Bill 1437 was passed and signed by the Governor." (*People v. Secrease* (2021) 63 Cal.App.5th 231, 254, review granted June 30, 2021, S268862 (*Secrease*).)

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Recently, the Legislature amended section 1170.95 by enacting "Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, to clarify that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural and probable consequences doctrine may obtain the same relief as persons convicted of murder under those theories.  (Stats. 2021, ch. 551, § 1, subd. (a).)  The amendment also codifies certain holdings in *Lewis*. . .; reaffirms the burden of proof at a resentencing hearing; and addresses the evidence a court may consider at a resentencing hearing.  (Stats. 2021, ch. 551, § 1, subds. (b)–(d).)" (*People v. Mejorado* (2022) 73 Cal.App.5th 562, 568, fn. 2.)

"Pursuant to amended section 1170.95, an offender must file a petition in the sentencing court averring that:  '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory

under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subds. (a)(1)–(3); see also § 1170.95 subd. (b)(1)(A).) Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' (§ 1170.95, subd. (b)(1)(C).)" (*People v. Cortes* (Feb. 15, 2022, No. B312185) ___ Cal.App.5th ___ [2022 Cal.App. LEXIS 117, at pp. *9–*10].)

"Where the petition complies with subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief." (*Lewis*, *supra*, 11 Cal.5th at p. 960.) Current section 1170.95, subdivision (c) provides in part, "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1170.95, subd. (c).)

"[A] trial court can rely on the record of conviction in determining whether that single prima facie showing is made." (*Lewis*, *supra*, 11 Cal.5th at p. 970.) The California Supreme Court has explained that "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds

13

without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id*. at p. 971.)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] . . . [T]he 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972; see also *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*), overruled on another ground in *Lewis*, at pp. 962–970.) "If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95[, subdivision] (a), then the trial court should issue an order to show cause." (*Drayton*, at p. 980.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) Under section 1170.95, subdivision (d)(2), "If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (§ 1170.95, subd. (d)(2).) Otherwise, at the hearing the prosecution has the burden to prove beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under the amended versions of sections 188 and 189. (§ 1170.95, subd. (d)(3).) Furthermore, section 1170.95, subdivision (d)(3) sets forth parameters for the evidence a court may consider at the hearing and states that "[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).) Subdivision (d)(3) also provides that "[a] finding that there is substantial

14

evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

As for our standard of review, we decide questions of statutory interpretation de novo. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 981.) Further, we review the trial court's factual findings for substantial evidence and its application of those facts to section 1170.95 de novo. (*Ibid*.)

### 2. Felony-Murder Special Circumstance

"Section 190.2 enumerates 'special circumstances' that, if found true, make a defendant convicted of first degree murder punishable by death or life imprisonment without the possibility of parole. One such special circumstance is the felony-murder special circumstance. The requirements of the felony-murder special circumstance mirror the post-Senate Bill 1437 requirements of felony murder. [Citation.] That is, the felony-murder special circumstance applies where (1) the murder occurred during the commission of a specified felony and (2) the defendant was the actual killer; with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the murder; or with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the felony. (§ 190.2, subds. (a)(17), (c), (d).)" (*People v. Pineda* (2021) 66 Cal.App.5th 792, 798, review granted Sept. 29, 2021, S270513 (*Pineda*).)

### 3. *Banks* and *Clark*

In 2015 and 2016, the California Supreme Court decided *Banks* and *Clark*, respectively. (*Banks*, *supra*, 61 Cal.4th 788; *Clark*, *supra*, 63 Cal.4th 522.) *Banks* and *Clark* "clarified the meaning of the [felony-murder] special circumstances statute." (*In re Scoggins* (2020) 9 Cal.5th 667, 671.) "*Banks* considered the major participant aspect of the statute and concluded that '[t]he ultimate question pertaining to being a major

15

participant is "whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations].' ' " (*Pineda*, *supra*, 66 Cal.App.5th at p. 799, review granted.) Additionally, the Supreme Court identified factors relevant to that determination. (See *Banks*, at p. 803.) Similarly, "*Clark* articulated case-specific factors that are relevant to whether a defendant exhibited reckless indifference to human life."[8] (*Pineda*, at p. 799; see also *Clark*, at pp. 618–623.)

"Following the decisions in *Banks* and *Clark*, the Judicial Council's Advisory Committee on Criminal Jury Instructions added optional language to CALCRIM No. 703 designed to capture the culpability factors enunciated in those decisions. [Citation.] The accompanying Bench Note advises that the trial court should determine whether these optional instructions setting forth guidance on the *Banks* and *Clark* factors need be given. [Citation.] Similar optional language based on *Banks* was added to CALJIC No. 8.80.1." (*Secrease*, *supra*, 63 Cal.App.5th at p. 252, fn. 12, review granted.)

The Courts of Appeal are divided on whether a pre-*Banks* and *Clark* felony-murder special circumstance finding precludes a defendant from demonstrating prima facie entitlement to relief under section 1170.95 (see *Pineda*, *supra*, 66 Cal.App.5th at pp. 799–801, review granted; *People v. Farfan* (2021) 71 Cal.App.5th 942, 955 (*Farfan*)), and the issue is currently pending before the California Supreme Court (see

---

[8] In *Scoggins*, our Supreme Court concluded that "[a] defendant with a pre-*Banks* and *Clark* felony-murder special-circumstance finding whose conviction became final prior to *Banks* and *Clark* may file a petition for habeas corpus seeking to have the finding invalidated. Such a defendant 'is entitled to habeas corpus relief " 'if there is no material dispute as to the facts relating to his conviction' " ' and 'the special circumstances statute as construed in *Banks* and *Clark*' did not prohibit his conduct." (*Pineda*, *supra*, 66 Cal.App.5th at p. 799, review granted.)

*People v. Strong* (Dec. 18, 2020, C091162) [2020 Cal.App.Unpub. LEXIS 8505], review granted Mar. 10, 2021, S266606 (*Strong*)).[9]

In *Pineda*, a different panel of this court addressed this issue in the context of a conviction that had become final several years before *Banks* and *Clark* were decided. (*Pineda*, *supra*, 66 Cal.App.5th at p. 797, review granted.)  The panel followed the conclusion of Division Four of the First Appellate District in *Secrease* that when a defendant convicted of murder with a felony-murder special circumstance finding " 'has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review—by any court, at the trial or appellate level—section 1170.95 courts have an obligation to undertake such an analysis at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of the statute.' " (*Pineda*, at p. 801.)

To effectuate the requisite "judicial determination as to whether [petitioner's] conduct is proscribed by the special circumstances statute, as construed in *Banks* and *Clark*" (*Pineda*, *supra*, 66 Cal.App.5th at p. 801, review granted), the *Pineda* court remanded the matter to the trial court " 'for resumption of proceedings at the section 1170.95, subdivision (c) entitlement-to-relief stage of the process, where the court's task will be narrowly focused on whether, without resolving conflicts in the evidence and making findings, the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks* and *Clark*.' " (*Id*. at pp. 801–802.) Further, the *Pineda* court declined to make the requisite determination in the first instance

---

[9] The question on review in *Strong* is:  " 'Does a felony-murder special circumstance finding  (Pen. Code, § 190.2, subd. (a)(17)) made before [*Banks*] and [*Clark*] preclude a defendant from making a prima facie showing of eligibility for relief under Penal Code section 1170.95?' " (*Farfan*, *supra*, 71 Cal.App.5th at p. 949.)  We note that in *Strong*—as in the present case—the defendant was tried before *Banks* and *Clark*, but those cases were decided during the pendency of the defendant's direct appeal. (*Strong*, *supra*, C091162, at p. *1, & p. *6, review granted.)  Further, as in this case, the defendant in *Strong* did not challenge the felony-murder special circumstance findings on direct appeal.  (*Id*. at p. *9, fn. 4.)

on appeal, explaining that the parties had not briefed the operative question under *Banks* and *Clark* and remand would "afford the parties the opportunity to fully develop their positions on this potentially dispositive issue." (*Id*. at p. 802.)

B. *Analysis*

Drummer contends that the approach this court took in *Pineda* (based on *Secrease*) is inconsistent with *Lewis* and *Drayton* and "the Legislature's intent that section 1170.95 petitioners are in a way entitled exactly to what *Secrease* says they are not: i.e., 'a relitigation of factual questions that were settled by a prior jury,' at least with respect to the ultimate fact of guilt for murder, because if it is shown that that factual question was settled under abrogated law, the petitioner is entitled to a hearing to relitigate it." We are not persuaded that we should reconsider *Pineda*. The California Supreme Court's decision in *Lewis* did not decide the issue presented here; rather, it is pending on review in *Strong*. Further, *Secrease* discussed and applied *Drayton* (see *Secrease*, *supra*, 63 Cal.App.5th at pp. 244, 264, review granted), and our Supreme Court cited *Drayton* approvingly in *Lewis* (see *Lewis*, *supra*, 11 Cal.5th at pp. 971–972, 974). We thus adhere to the approach set forth in *Pineda*, pending further guidance from our Supreme Court.

Drummer alternatively contends that, even under the *Pineda*/*Secrease* approach, "reversal is necessary here because the trial court regarded the jury's finding as 'binding,' and it did not undertake a substantial evidence review of Drummer's record of conviction." By contrast, the Attorney General asserts that, unlike the defendants in *Pineda* and *Secrease*, Drummer's conviction became final after *Banks* and *Clark* and his "failure to seek a sufficiency of the evidence review in the underlying appeal should bar relief."

We agree with Drummer that he is not precluded from making a prima facie showing of entitlement to relief under section 1170.95, subdivision (c) simply because his conviction became final after *Banks* and *Clark* and he failed to raise any sufficiency of the evidence claim in his direct appeal. Although the procedural posture of this case is

18

different from *Pineda* and *Secrease*, it falls within the split of authority that is pending review in *Strong*. Moreover, no court has conducted a *Banks* and *Clark* sufficiency-of-the-evidence review of the jury's felony-murder special circumstance finding against Drummer. Further, as the *Secrease* court noted, "The idea of excluding felony-murder special-circumstances defendants from the ambit of the statute, as a class, seems all the more at odds with legislative intent [underlying section 1170.95] because the high costs of lifetime incarceration are at their peak for inmates who will never be parole-eligible." (*Secrease*, *supra*, 63 Cal.App.5th at p. 259, review granted.)

Under these circumstances, we conclude the trial court erred when it denied Drummer's petition for failing to make the required prima facie showing under section 1170.95, subdivision (c). We decide Drummer is "entitled to a judicial determination as to whether his conduct is proscribed by the special circumstances statute, as construed in *Banks* and *Clark*." (*Pineda*, *supra*, 66 Cal.App.5th at p. 801, review granted.)

Drummer further asserts that this court should review the trial record, conclude that it does not contain substantial evidence that he was a major participant acting with reckless indifference to human life as a matter of law, and remand this matter with direction to issue an order to show cause. We decline to decide whether an order to show cause should issue on the record before us. Although *Secrease* and *Pineda* suggest that the determination described above can be made in the first instance on appeal when the record of conviction is before the appellate court (see *Secrease*, *supra*, 63 Cal.App.5th at pp. 255, 260–261, review granted; *Pineda*, *supra*, 66 Cal.App.5th at p. 802, review granted), "[r]emand will afford the parties the opportunity to fully develop their positions on th[e] potentially dispositive issue [regarding the sufficiency of the evidence for the special circumstance finding] with the full benefit of the guidance set forth here and in [*Pineda* and] *Secrease*." (*Pineda*, at p. 802.)

Moreover, current section 1170.95, subdivision (c) states that, after providing an opportunity for briefing, the sentencing court "shall hold a hearing to determine whether

19

the petitioner has made a prima facie case for relief" and either issue an order to show cause or "provide a statement fully setting forth its reasons for" "declin[ing] to make an order to show cause." (§ 1170.95, subd. (c).) The prior version of section 1170.95, subdivision (c) did not require a hearing or statement of reasons by the sentencing court at the prima facie review stage. (See Stats. 2018, ch. 1015, § 4.) We conclude that, under the present circumstances, the trial court should decide in the first instance whether Drummer has made a prima facie showing that he is entitled to relief and explain its decision consistent with the requirements of the current version of section 1170.95, subdivision (c).

Accordingly, we will remand this matter to the trial court, where "the court's task will be narrowly focused on whether, without resolving conflicts in the evidence and making findings, the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks* and *Clark*. If the answer to that is yes, the section 190.2, subdivision (d) finding made against [Drummer] forecloses him from further litigating that issue, thus rendering him ineligible for resentencing relief as a matter of law. If the answer is no, an order to show cause must issue and an evidentiary hearing must be held under section 1170.95, subdivision (d)(3)." (*Secrease*, *supra*, 63 Cal.App.5th at p. 264, review granted; *Pineda*, *supra*, 66 Cal.App.5th at pp. 801–802, review granted.)

Further, "in conducting its review under *Banks* and *Clark*, the trial court may take into account anything in the trial record the parties bring to its attention, but must disregard the prosecution's theories that [Drummer] was the [actual killer] or acted with intent to kill. Because nothing in the verdict or the findings accompanying the verdict indicates that the jury actually and necessarily adopted either of those alternative theories, they are not relevant at this stage. Under the pleading standards enunciated in *Drayton* [and *Lewis*], [Drummer]'s allegations that he was not the actual killer and did not intend to kill are not irrefutably rebutted by the record of conviction. The focus of the *Banks*

20

and *Clark* sufficiency-of-the-evidence review will be *solely* on whether [Drummer] is a 'person, not the actual killer' who acted as 'a major participant' in an enumerated felony 'with reckless indifference to human life' (§ 190.2, subd. (d)), which is the standard incorporated into section 189, subdivision (e)(3) by reference. Any evidence that [Drummer] is liable for murder under section 189, subdivision (e)(1), on the ground he was the actual killer, or section 189, subdivision (e)(2), on the ground he was not the actual killer but acted with intent to kill as an aider and abettor of murder, raises contested issues of fact and must be addressed at an evidentiary hearing under section 1170.95, subdivision (d)(3)."[10] (*Secrease*, *supra*, 63 Cal.App.5th at pp. 264–265, fn. omitted, review granted.)

## III. DISPOSITION

The trial court's October 20, 2020 order denying Drummer's Penal Code section 1170.95 petition is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

---

[10] Because we conclude that the jury's felony-murder special circumstance finding does not preclude Drummer from making a prima facie showing of entitlement to relief given that no court has conducted the requisite sufficiency-of-the-evidence determination under *Banks* and *Clark*, we need not address whether the trial court further erred by considering facts presented at the trial of coparticipants Austin and Garcia. However, for the convenience of the trial court and parties on remand, we note that our Supreme Court discussed the "record of conviction" in *Lewis*, *supra*, 11 Cal.5th at pp. 970–972. *Drummer*'s record of conviction does not encompass the later trial of Austin and Garcia, at which Drummer was not present and was not represented by counsel. (See *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350; *People v. Woodell* (1998) 17 Cal.4th 448, 454–455.)

_____
                               Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Grover, J.

**H048576**
***People v. Drummer***